GOODYEAR TIRE & RUBBER CO. v. HOOD RUBBER CO.

(District Court, D. Massachusetts. December 28, 1914.)

1. PATENTS ⊚〰62—ANTICIPATION BY PRIOR STRUCTURES—EVIDENCE TO ESTAB-
LISH.

Evidence of the making and use of cores for use in making pneumatic tires, which were in all essential respects the same as that covered by a subsequent patent to another, consisting of dated working drawings from which the cores were made, the testimony of the person who made the drawings that he made and dated them at or near the times of the dates thereon, with clear evidence that cores were made from the drawings, and used continuously from the time of their completion, *held* sufficient to establish the date of such use and to render the patent void for anticipation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. ⊚〰62.]

2. PATENTS ⊚〰328—ANTICIPATION—COLLAPSIBLE CORE FOR MAKING PNEU-
MATIC TIRES.

The State patent, No. 865,064, for a collapsible core for use in the manufacture of pneumatic tires, *held* void for anticipation by cores having all the essential features of that of the patent made and used by others prior to the date of the alleged invention by the patentee.

In Equity. Suit by the Goodyear Tire & Rubber Company against the Hood Rubber Company. On final hearing. Decree for defendant.

Decree affirmed in 225 Fed. ——, —— C. C. A. ——.

H. A. Toulmin, of Dayton, Ohio, for complainant.

James M. Spear, of Washington, D. C., and Ellis Spear, Jr., of Boston, Mass., for defendant.

DODGE, Circuit Judge. The plaintiff owns United States patent No. 865,064, issued September 3, 1907, to Will C. State, for a collapsible core. In its bill (dismissed by consent as to the Shawmut Tire Company) the Hood Rubber Company is charged with infringing all of the four claims of the patent.

The patented core is for use in manufacturing pneumatic tires of the double-tube type having inextensible bands or edges. The rubber tire, annular in form, having been built up and molded by heat upon the core, it is then necessary to withdraw the core from within the completed tire through the opening left along its inner or rim face. The diameter of the core within the tire being much greater than the width of the opening referred to, the inextensible bands or edges of the tire prevent the withdrawal of the core entire and require it to be constructed in sections which, held together as a complete core during the molding process, can be readily disconnected from each other, after that process has been completed and separately pulled out.

The plaintiff is a large manufacturer of tires, and it also manufactures the cores which it uses for the purpose. The defendant, also a maker of tires, buys the cores which it uses from others. There is no proof of any infringement except by use of cores thus purchased. There is no dispute as to the kind of cores the defendant has thus

used. They are like Complainant's Exhibit Collapsible Core illustrated on page 112 of the complainant's record. They infringe all the claims of the patent if said claims are valid.

Claims 1 and 4 are broader than claims 2 and 3. They cover a device comprising independent segment-shaped members adapted to abut against each other with means overlapping their inner portions for maintaining them in abutting engagement (claim 1), or a plurality of independent segment-shaped members adapted to fit against each other and forming a collapsible core when in an abutting engagement with means independent of them for maintaining them in abutting position (claim 4).

The further requirements of claim 2 are, in substance, that the lines of severance between the several parts shall be oblique to the radii of the annular member formed by the parts, and that the parts shall be held in position together by a pair of rings clamping an annular bead-ing formed by the inwardly projecting portions of the parts. The further requirements of claim 3 are that the parts shall be adapted when united to form an annular body, the points of severance being oblique to the radii, besides forming with their inwardly projecting edges an annular beading adapted to be clamped by a pair of rings with means for clamping the beading on the rings.

The defendant relies on a number of prior patents in support of its contention that the patent in suit is invalid in view of the prior art. I am unable to find in any of them what can fairly be called an anticipation of the patented device. If some of the devices described in them comprise cores made collapsible by division into sections, and if it can be said as to some of these that the core-sections are divided "non-radially," I do not find in any of them core-sections held together for use either by means overlapping their inner portions, or independent of them, or by any means corresponding to the annular beading formed by their inwardly projecting edges and the grooved clamping rings which constitute the means described in the patent; nor, as to any of these prior patented devices, does it appear that they were intended for or capable of use in the manner or for the purposes contemplated by the patent in suit.

The defendant further relies upon various unpatented core devices said to have been made or used by other tire manufacturers, beginning in the latter part of 1904 or the early part of 1905.

The bill in this case was filed December 5, 1910. The evidence was taken beginning in March, 1912. There was a supposed final hearing in September, 1913, but before any decision was announced the defendant was permitted, in June, 1914, to reopen the case for further evidence regarding another alleged prior use claimed to have been earlier than 1905. The additional evidence bearing upon this question having been completed on both sides, the case was further argued, and was finally submitted December 18, 1914. It thus appears that all witnesses testifying with regard to prior use in 1905 or earlier gave their testimony at least six years after the events to which their testimony relates.

[1] Among the alleged anticipatory devices brought before the court by the defendant's evidence in September, 1913, the only ones

which seem to me capable, in any event, of being regarded as anticipating the device of the patent are certain cores said to have been made and used by the Goodrich Rubber Company, of Akron, Ohio. This company, like the plaintiff and defendant, is and has been since 1900, or earlier, a large manufacturer of tires, including, from about the beginning of 1904, tires of the kind intended to be made on the patented device. Unlike the defendant, instead of buying its cores, this concern has made them itself, or had them made to order for it.

Cores made according to the working drawings from the Goodrich Company's files, which have been marked Defendant's Exhibits Goodrich Drawings E1412, E1414, E1416, E1418, E1423, respectively, would, in my opinion, embody the invention described in the patent in suit without material difference. These drawings bear various dates from August 17 to August 23, 1905. They are identified by a draftsman then in the Goodrich Company's employ, as made and dated by him at or near the time of the dates which they bear. That the Goodrich Company made or had made for it cores according to these drawings at least as early as the dates upon them, that it was then using and has been ever since using such cores in the manufacture of its tires, seems to me sufficiently established by the testimony. Some of the witnesses were then and have ever since been employés of the company in positions requiring them to know about the manufacture of its tires and the various cores used. Others were at the time employés, in capacities requiring similar knowledge, of core-making concerns from which cores to be made according to the drawings were ordered by the Goodrich Company. What were claimed to be original orders for the manufacture of such cores were also produced. It is true that none of the identical cores then made according to the drawings were produced, but it appears that the cores soon wear out in use and have to be replaced by others. It cannot be said, however, that the testimony of these witnesses is based merely on their unaided recollection after six years, and it seems to me that the drawings sufficiently meet the requirement that testimony of this kind must be supported by "concrete, visible, cotemporaneous proofs which speak for themselves," according to the opinion of the Court of Appeals for this circuit in Emerson & Co. v. Simpson, etc., Corporation, 202 Fed. 747, 750, 121 C. C. A. 113. The testimony referred to further tends to show the experimental making and use of cores according to some of these drawings as early as the spring of 1905.

To meet this evidence, the plaintiff attempted, by the testimony of the patentee and others, to carry back the date of his invention from the date of his application for the patent (December 14, 1906) to the fall of 1904, or some time in January, 1905. The patentee was then and has ever since been in the plaintiff's employ as mechanical engineer. He testified that he conceived his invention in the early part of the fall of 1904; that the first experimental tire was made on it "along in October, 1904;" that his experimenting was carried on "around December" of 1904; and that tires were produced commercially from his cores by the plaintiff company in the spring of 1905. The first core, according to him, was built from a pencil sketch, which is not produc-

ed. The first working drawing, according to him, was made April 15, 1905. A drawing bearing this date, from the files of the Goodyear Company, is in evidence, marked "Complainant's Exhibit Goodyear Blue Print." The patentee, however, did not make or date this drawing, nor is there any testimony from the person who did make or date it. The plaintiff, however, like the defendant, and no doubt for like reasons, fails to produce any identical core made from the drawing referred to, at the time testified.

The only testimony directly tending to corroborate that of the patentee himself as to the time when the first experimental tire was made on a core such as the Goodyear drawing shows comes from a witness who has been a tiremaker in the Goodyear Company's employ since 1898, and was foreman of its tireroom when he testified in 1913. He says he built the first tire on such a core in October or November, 1904, or "about that time"; but he could refer to nothing enabling him to fix the date beyond the fact that the then foreman of the tireroom came to the factory in 1903. The president of the Goodyear Company, connected with it since 1898, testified that the name "New Goodyear Detachable" was given to tires made on the patented type of core, that the name was first applied to them "about January 1, 1905," just before preparations were made to market that type of tire, and substantially at the time the first tire of the type was built. He also testified that he had no knowledge of tires of the type called by the above name being built on any other type of core than that described in the patent. Records and orders from the company's files show sales of tires under the above name as early as January 11, 1905, but it does not seem to me clearly established that so-called "New Goodyear Detachable" tires then sold must have been made on cores corresponding to the Goodyear drawing, bearing the date of April 15, 1905.

The evidence upon which the plaintiff seeks to carry back the date of the invention to the fall of 1904 does not seem to me, on the whole, by any means as convincing as that whereby the defendant seeks to show use of cores made according to the Goodrich drawing as early as the spring of 1905—particularly in view of the facts that the precise date of the Goodyear drawing is left to be determined only from the date found on it, without testimony from any witness who made or dated it, or any other positive proof—and that the patentee himself, while undertaking to fix the date of his invention as above, cannot deny that he let two years from that date pass before applying for any patent upon the alleged invention. I must hold that the plaintiff's evidence is not sufficient to prove the patentee entitled to a date earlier than that of his application, and this leaves the patent anticipated by the Goodrich cores shown to have been made and used at least as early as August, 1905.

But whether or not this result is right, I am obliged to regard the evidence taken after the reopening of the case in June, 1914, as establishing the use by the Fisk Rubber Company, of Chicopee, Mass., of cores embodying every essential feature of the invention described in the patent as early as the spring of 1904, a time considerably antedating the earliest date claimed by the patentee.

Like the plaintiff, the defendant, and the Goodrich Company, the Fisk Company is and has been a large manufacturer of tires. It has been so engaged since 1901. It has also been making tires with inextensible edges since some time in 1902.

The testimony of its vice president, connected with it since 1902 (in 1904 superintendent of its factory), of its assistant superintendent, connected with it since 1903, and of the foreman of its machine shop between 1902 and 1906, seems to me to have shown that in the spring of 1904 it began to make tires with inextensible edges upon cores such as are shown in a drawing produced from its files and marked "Defendant's Exhibit J." The drawing bears date April 30, 1904, but as in the case of the Goodyear drawing there is no testimony from the person who made and dated it. It also bears, however, the date "5/4/04" with the letters "O. K. J. C. B.," and John C. Bennett, foreman of the machine shop at the time, has testified that he put those letters on the drawing in compliance with instructions from his superiors that he "O. K." all drawings before patterns were made or machine work done from them.

The full and explicit testimony given by the three witnesses referred to regarding the construction of cores according to this drawing, their division into sections, and their use in the early part of 1904 in making tires with inextensible edges, leaves me satisfied that the Fisk Company had then adopted and were successfully using what was substantially the device described in the patent in suit.

The testimony referred to shows that Defendant's Exhibit J was one step in the Fisk Company's development of a core adapted to the manufacture of such tires, which development, begun in 1902 or 1903, progressed after May, 1904, until it resulted in the use of what is referred to as the "Integral Head and Dome Core" instead of the "Two Part Head and Dome Core" shown in the drawing J. The later form has been continuously used since 1904. But the evidence seems to me sufficient to prove that the "Two Part, etc., Core" was, for all practical purposes, no less an anticipation of the patent than the later "Integral, etc., Core," used from the fall of 1904 down to the present time. What in the former consisted of two castings fastened together became one casting in the latter, and there was no other difference.

The plaintiff insists that because the drawing Exhibit J does not show any division of the core it represents into removable sections, it is not proof of the kind required by what is above quoted from Emerson, etc., Co. v. Simpson. But the metal "dome head" adapted to fit over and be fastened to the metal "air bag ring," as shown in Exhibit J, was adopted to replace an "air bag" of rubber covered with fabric previously used outside the metal "air bag ring" and capable of inflation so as to keep the tire in shape during the vulcanizing process, as the testimony fully shows. That the "air bag ring," while so used, was nonradially divided into sections in order to remove it from within the finished tire is not left to depend on the unsupported memory of the witnesses. A specimen is produced from among the Fisk Company's discarded cores and the testimony is sufficient for the conclusion that it was made before the summer of 1904. It is nonradially divided

into sections, and seems to me enough to support the testimony of the witnesses that when the crown casting forming the "dome head" came to be joined to the "air bag ring" for the purpose of forming the "Two Part, etc., Core," it was divided into sections corresponding with those in the "air bag ring" as shown by the specimen referred to. The necessities of the case would then require such a division; and according to the testimony, after the "air bag ring" and the dome ring had been fitted and fastened together, such division was made by sawing the core so composed. Thus divided, the sections held together by bead rings clamping their inner projections, as shown in the drawing Exhibit J, constituted, in substance, as it seems to me, the device of the patent.

The plaintiff attacks the testimony of the witnesses from the Fisk Company upon evidence claimed to show that cores more exactly like the cores of the patent than its "Integral Head and Dome Core" are and have been used by that company in producing tires of the kind referred to. The argument is that "the Fisk Company had a motive in volunteering this evidence, being an infringer of the State patent." But supposing the Fisk Company's use of such cores established, I am unable to find sufficient reason for doubting the substantial truth of the testimony of the witnesses referred to, taken in connection with the exhibits produced, upon the points above considered.

[2] The evidence in the case seems to me to show that at or shortly before the beginning of 1904 the attention of tiremakers in general was being devoted, more than it had previously been, to the manufacture of tires with inextensible edges and the development of the kind of core best adapted to their production. That the plaintiff company, the Goodrich Company, and the Fisk Company should, by independent endeavors in this direction, have reached results so nearly resembling each other tends strongly to indicate what the patent itself, in view of the various earlier patented core devices, affords no little reason to believe, viz., that the production of the patentee's device did not involve patentable invention, and was the result of nothing more than mechanical skill. But, however this may be, I hold, for the above reasons, that the patent is, in any event, anticipated by the cores produced or used by the Fisk Company and the Goodrich Company in 1904 and 1905.

A decree may be entered dismissing the bill, with costs.